2008 BNH 010

___

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:                                              Bk. No. 07-11721-JMD
                                                    Chapter 11
Lakeshore Construction Company
of Wolfeboro, Inc.,
        Debtor

*Mark L. Van De Water, Esq.*
*Bow, New Hampshire*
*Attorney for Debtor*

*Zachary R. Gates, Esq.*
*Downs Rachlin Martin PLLC*
*Brattleboro, Vermont*
*Attorney for Creditor*

## MEMORANDUM OPINION

### I. INTRODUCTION

The Court has before it a Motion for Allowance and Payment of Administrative Expense Claim (Doc. No. 118) (the "Motion") filed by Deere Credit, Inc. (the "Creditor").  This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. FACTS

The Creditor is seeking an order of the Court directing Lakeshore Construction Company of Wolfeboro, Inc. (hereinafter "Lakeshore" except when referred to as the debtor-in-possession under § 1101[1] when it shall be referred to as the "Debtor") to pay to it the following amounts as priority administrative expenses under § 503(b)(1)(A) of the Bankruptcy Code:

| | |
|---|---|
| Priority administrative expense claim pursuant to § 365(d)(5) for rent (3 mos. @ $4,716.84/mo. = $14,150.52), repossession and repair costs ($1,837.66), and legal fees ($4,223.67) | $20,211.85 |
| Priority administrative expense claim pursuant to § 503(b)(1)(A) for rent (2 mos. @ $4,716.84/mo. = $9,433.68 + 17 days @ $157.22/day = $2,672.74) | $12,106.42 |
| Total | $32,318.27 |

The payments represent the amounts which the Creditor claims are due under the terms of an unexpired lease of personal property between Lakeshore and the Creditor dated October 23, 2003 (the "Lease"). The Lease was for a John Deere model 824J wheel loader with bucket (the "Equipment") for the period November 10, 2003 to November 10, 2008. Rent in the amount of $4,716.84 per month was due under the lease on the tenth day of each month with rent for the first two months and the last month paid in advance. No security deposit was paid under the terms of the Lease.

The events that appear to be material to the arguments of the parties are as follows:

| | |
|---|---|
| August 13, 2007 | The date the chapter 11 petition was filed (the "Petition Date"). |

---

[1] In this opinion the terms "Bankruptcy Code," "Code," and "§" shall mean title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8 ("BAPCPA").

| | |
|---|---|
| October 12, 2007 | The sixtieth day following the Petition Date. |
| October 29, 2007 | Creditor files its Motion for Relief from the Automatic Stay (Doc. No. 48). |
| December 5, 2007 | Court denies stay relief and orders adequate protection payments in the amount of the payments due under the Lease (Doc. No. 79) (the "Adequate Protection Order"). |
| December 21, 2007 | Creditor files an Affidavit of Non-compliance setting forth the Debtor's failure to comply with the Adequate Protection Order (Doc. No. 100). |
| December 28, 2007 | Court orders stay relief based on non-compliance with the Adequate Protection Order (Doc. No. 101) (the "Stay Relief Order"). |
| January 24, 2008 | Creditor repossesses the Equipment. |

## III.  DISCUSSION

The Creditor contends that because the Debtor never rejected the Lease, it is entitled under § 365(d)(5) to recover the amount of all obligations becoming due under the Lease from the sixty-first day after the Petition Date through the date of repossession, including the costs of repossession and making the Equipment operable, in the amount of $20,211.85.  The Creditor also seeks payments under § 503(b)(1)(A) for rent due under the Lease from the Petition Date through October 31, 2007 in the amount of $12,106.42.  The Creditor contends that it is entitled to immediate payment of its administrative expense claims.

The Debtor objects to the Motion.  The Debtor objects to the § 365(d)(5) claim on the basis that it is excessive.  The Debtor points out that only two payments became due under the Lease between the sixtieth day after the Petition Date and the date stay relief was granted,

3

namely the November 10 and December 10, 2007 payments. In addition, the Debtor contends that the claims for attorney's fees and the costs of repossession and post-repossession repairs are not provided for in the Lease. The Debtor objects to the § 503(b)(1)(A) claim because the Creditor has failed to present any evidence that the Equipment was actually used by or otherwise was beneficial to the bankruptcy estate.

### A. Administrative Claim Under Section 365(d)(5)

Section 365(d)(5) requires the debtor-in-possession in a chapter 11 case to:

> timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected notwithstanding section 503(b)(1) . . .

11 U.S.C. § 365(d)(5). The Creditor contends that § 365(d)(5)[2] requires the Debtor to perform its obligations under the Lease as they become due after the sixtieth day following the Petition Date and prior to rejection, without proration. See In re Muma Services, Inc., 279 B.R. 478, 487 (Bankr. D. Del. 2002). Section 365(d)(2) provides that an unexpired lease of personal property may be assumed or rejected at any time before confirmation of a plan of reorganization, unless the court orders otherwise. In this case, the Court has not altered the time line under § 365(d)(2) and the Debtor has not taken any action to either accept or reject the Lease.

The provisions in § 365(d)(5) were added to the Bankruptcy Code in 1994 to make it easier for lessors of personal property to recover postpetition lease payments prior to acceptance

---

[2] The provisions requiring a trustee to timely perform all of the obligations of the debtor under an unexpired lease of personal property was added to the Bankruptcy Code in 1994 as § 365(d)(10). In re Midway Airlines Corporation, 406 F.3d 229, 234 (4th Cir. 2005). BAPCPA amended § 365 by renumbering former § 365(d)(10) as § 365(d)(5). However, BAPCPA did not alter or amend the language of former § 365(d)(10).

or rejection of a lease by the trustee or debtor-in-possession. Midway Airlines, 406 F.3d at 234. The language was modeled after the language in § 365(d)(3) requiring postpetition lease payments to lessors of nonresidential real property.[3] Both subsections impose a duty of timely performance on trustees and debtors-in-possession and both subsections provide that this duty exists "notwithstanding section 503(b)(1)" of the Bankruptcy Code. Id. Accordingly, courts often look to decisions construing § 365(d)(3) in cases involving § 365(d)(5).[4] Id.

An examination of the language of § 365(d)(5) leads to three conclusions regarding the treatment of such claims. First, the phrase "notwithstanding section 503(b)(1) of this title" eliminates any requirement for an order expressly authorizing payment of an administrative rent claim becoming due between the sixtieth day after the filing of the bankruptcy petition and the acceptance or rejection of the lease. Second, the same clause eliminates the "actual and necessary" test under § 503(b)(1). Third, personal property lessors may assert administrative claims under § 365(d)(5) based upon the terms of the lease and not the benefit to the bankruptcy estate. See Pyxsys Corp., 288 B.R. at 313.

In the First Circuit, requests for priority payment of unsecured claims as an administrative expense under § 503(b) have always been closely scrutinized because such treatment is counter to the policy underlying federal bankruptcy law of equality of distribution

---

[3] Section 365(d)(3) was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgment Act of 1984, Pub.L. No. 98-353. In re Pyxsys Corp., 288 B.R. 309, 312 (Bankr. D. Mass. 2003).

[4] While the provisions of § 365(d)(5) and § 365(d)(3) are similar, they are not identical. "Section [365(d)(5)] applies only to chapter 11 cases, whereas § 365(d)(3) is not limited by chapter. Also, under § 365(d)(3) the trustee is required to perform all lease obligations immediately upon entry of an order for relief. Under [§ 365(d)(5)] the trustee is not required to perform until sixty-one days after the entry of an order for relief." Midway Airlines, 406 F.3d at 234, n.1.

among creditors with legally similar rights.  Woburn Assoc. v. Kahn (In re Hemingway Trans., Inc.), 954 F.2d 1, 4-5 (1st Cir. 1992) (priority claims under § 503(b)(1)(A) of the Bankruptcy Code); Cramer v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.), 536 F.2d 950, 953 (1st Cir. 1976) (priority claims under § 64(a)(1) of the Bankruptcy Act).  Bankruptcy Code provisions governing requests for priority payment of unsecured claims are strictly construed.  Hemingway, 954 F.2d at 5.  The Creditor contends that § 365(d)(5) alone, or in conjunction with § 503(b)(1)(A), require the sums requested in the Motion to be paid as priority administrative claims.  Accordingly, the Court must strictly construe these statutory provisions relied on by the Creditor.  Pyxsys Corp., 288 B.R. at 317.

The provisions of § 365(d)(5) require a debtor-in-possession to perform all of the obligations of the debtor under a lease of personal property, with exceptions not relevant in this proceeding, "first arising from and after 60 days after the order for relief."  This duty continues until the lease is assumed or rejected, "unless the court, after notice and a hearing and based on the equities of the case, orders otherwise."  11 U.S.C. § 365(d)(5).  The Creditor's claim under § 365(d)(5) consists of three components, lease payments, repossession and repair costs, and attorney's fees.  The Court shall separately examine each component.

### 1. Section 365(d)(5) Claim for Lease Payments

Under the terms of the Lease, a "lease payment" in the amount of $4,716.84 was due on the tenth day of each month during its term.  The Creditor has included three monthly payments in its § 365(d)(5) claim.  It appears that the claim is based upon payments due on November 10 and December 10, 2007, and January 10, 2008.  All of those payment dates are subsequent to sixty days after the order for relief and before acceptance or rejection of the Lease.  However,

the third payment became due on January 10, 2008, which was thirteen days after the entry of the Stay Relief Order.

Under the prevailing rationale of <u>Hemingway</u>, 954 F.2d at 4-5, and <u>Mammoth Mart</u>, 536 F.2d at 953, the Court might well deny a lessor of personal property priority claim treatment under § 365(d)(5) for rent payments becoming due after an order granting relief from the stay is entered if, under the facts of a particular case, such lessor unreasonably delayed exercising its rights to recover the leased property and pursue the remedies available under the lease in question. However, in this case the Stay Relief Order did not waive the ten day stay imposed by Federal Rule of Bankruptcy Procedure 4001(a)(3). Because that ten day stay did not expire until January 7, 2008, including the lease payment first becoming due three days later on January 10, 2008 in the § 365(d)(5) claim is reasonable.

The Debtor contends that it did not actually use the Equipment between the Petition Date and the date it was repossessed and, therefore, the Creditor is not entitled to a priority claim for lease payments. The Court rejects the Debtor's argument because it ignores the language of the statute. Under § 503(b)(1)(A) a priority claim is limited to an amount representing the bankruptcy estate's actual and necessary use of the property in question, but claims under § 365(d)(5) are not subject to such limitation. <u>Midway</u>, 406 F.3d at 237. Section 365(d)(5) imposes liability for lease payments on the Debtor "notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(5). This language "relieves the lessor from proceeding under § 501(b)(1)(A), which would limit the recovery to an amount representing only the actual and necessary use by the estate." <u>Midway</u>, 406 F.3d at 237.

## 2.  Section 365(d)(5) Claim for Repossession and Repair Expenses

The Creditor is claiming $1,837.66 for expenses relating to the repossession and post-repossession repair of the Equipment.  This part of the Creditor's § 365(d)(5) claim is based upon the cost of traveling to Woleboro, New Hampshire to repossess the Equipment ($332.50), starting the Equipment ($518.05), transporting the Equipment to a storage location in Pembroke, New Hampshire ($702.00) and replacement of fuel filters because the equipment "runs rough" ($285.11).  The Creditor contends that pursuant to § 365(d)(5) it is entitled to recover not only rent but also damages for a debtor's failure to maintain the property and other costs of enforcing the lessor's rights, such as transportation charges and legal expenses, relying on In re Hayes Lemmerz Int'l, Inc., 340 B.R. 461, 473 (Bankr. D. Del. 2006).

The bankruptcy court in Hayes held that an administrative claim under § 365(d)(10) would arise only if the damage in question occurred between sixty days after the Petition Date and rejection.  Id.  "Where no benefit was conferred within the first fifty-nine days or where the damage first occurred pre-petition, no administrative expense arises."  Id.  The Delaware bankruptcy court's interpretation of the language in § 365(d)(5) is consistent with the strict construction required in this Circuit.  Hemingway, 954 F.2d at 4-5.  The Creditor has the burden of proving when the damage to the Equipment occurred if it is to include the costs of such repairs within its administrative claim under § 365(d)(5).  Id. at 5.  The Creditor presented no evidence of when the damage to the equipment occurred.  Therefore the cost of such repairs ($803.16) may not be included in the § 365(d)(5) priority administrative claim.

In addition, such a recovery under § 365(d)(5) is only permitted to the extent permitted under the terms of the underlying personal property lease itself.  Muma, 279 B.R. at 488-89.

Upon early termination of the Lease, paragraph 4 required the Debtor to return the equipment, at the Debtor's expense, to the Creditor at a place designated by it no more than fifty miles from the place of delivery of the Equipment. However, pursuant to paragraph 5 of the Lease, early termination could only occur if the Debtor were not in default and requested early termination. As of the date of repossession by the Creditor, the Debtor was in default and had not requested an early termination. Upon default, paragraph 7.3 of the Lease gave the Creditor the right to repossess the Equipment. However, paragraph 7.3 only required the Debtor to surrender the equipment, not deliver it to the Creditor. Accordingly, the expense of repossession and transport of the Equipment may not be included in the § 365(d)(5) priority administrative claim.

Section 365(d)(5) required the Debtor to timely perform all of its obligations under the Lease arising from and after sixty days following the Petition Date until the Lease was rejected. The Creditor's exercise of its right to repossess the Equipment after the Debtor's default under the provisions of the Lease is simply the other side of the rejection coin. Section 7.4 of the Lease permitted the Creditor to include the recovery, repair and storage of the equipment in a formula specified in the Lease for calculation of the amount, that the Debtor may owe the Creditor after the repossession and sale of the Equipment.

The language of § 365(d)(5) sets the end of the Debtor's duty to perform obligations under that provision of the Bankruptcy Code as the time when the Lease is assumed or rejected. It would be illogical to conclude that if, as in this case, a debtor never acts to assume or reject a lease, the period for performance of obligations under a lease never ends. The Court finds that once the lessor of personal property has repossessed the leased property and is in the process of exercising its remedies under the lease, the period for performance by a debtor-in-possession or

trustee under § 365(d)(5) has ended under the terms of the statute. Any other construction of the statute would convert what would otherwise be a prepetition unsecured deficiency claim under an unassumed executory contract into a priority administrative claim. Such a construction would result in the same liability to the bankruptcy estate after default under a personal property lease that had not been assumed as one that had been assumed.

Nothing in the language of § 365(d)(5) indicates a Congressional intent to convert such a deficiency claim held by the lessor of personal property from a general unsecured claim into a priority administrative claim. No case has been cited to the Court which would support such a conclusion. While the costs of repossession and repair of the Equipment may be components of the Creditor's ultimate unsecured claim in this bankruptcy case, the Debtor was not obligated to pay or reimburse for such expenses during the term of the Lease. Any such obligation arose under the terms of the Lease only after default, repossession and sale of the Equipment. Such expenses may not be part of a § 365(d)(5) priority administrative claim.

### 3. Section 365(d)(5) Claim for Attorney's Fees

The Creditor has included $4,223.67 in attorney's fees and costs for the period October 23, 2007 through February 6, 2008 in its § 365(d)(5) priority administrative claim. The Creditor claims that the Debtor is obligated under the Lease to pay reasonable attorney's fees and costs in the enforcement of the lease. The Debtor objects and contends that no provision of the Lease obligates to Debtor to pay such expenses.

If a debtor fails to perform the primary obligation under a personal property lease (i.e. pay the lease payment) and a creditor incurs legal fees seeking to obtain payment, such attorney's fees may be entitled to the same administrative priority as the rent obligation if such

liability arises under the terms of the personal property lease.  In re Beltway Med., Inc., 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006).  An examination of the Lease discloses several provisions which require the Debtor to pay in the first instance or to reimburse the Creditor for certain expenses other than the lease payments.  Such expenses include insurance on the Equipment (¶ 9), uninsured damage claims or insurance deductibles (¶ 10), indemnification for personal injury or property damages claims arising from the use of the Equipment (¶ 11), and taxes, title fees and registration fees (¶ 12).  The Court has found no provision in the Lease that requires the payment of attorney's fees by the Debtor during the term of the Lease.  Attorney's fees are one of the expenses which are included in the calculation of a deficiency claim after repossession and sale of the Equipment under paragraph 7.4.  However, for the reasons discussed in section III.A.2 above, a liability arising after repossession and sale is outside the time period for which the Debtor is obligated to perform under § 365(d)(5).

### B.  Payment of Section 365(d)(5) Claims

The Creditor contends that the provisions of § 365(d)(5) require the Court to order the Debtor to make immediate payment of any claim under that section.  Section 365(d)(5), similar to § 365(d)(3), provides a right but no remedy.  Midway, 406 F.3d at 235; Pyxsys, 288 B.R. at 313.  In effect, the Creditor is asking the Court to award a § 365(d)(5) claim a superpriority status.  The majority of cases interpreting § 365(d)(3) hold that it does not create a superpriority claim for rent.  Pyxsys, 288 B.R. at 314.  The minority view is that § 365(d)(3) creates a right to immediate payment for postpetition, pre-rejection rent claims under nonresidential real estate leases, although there is a split in the minority view on whether such payments are subject to later disgorgement upon administrative insolvency.  Id. at 314-15.  The majority of cases

11

interpreting the language of § 365(d)(5) hold that it creates an administrative expense directly under § 365(d) that is independent from § 503(b)(1). Midway, 406 F.3d at 235. The minority of cases hold that § 365(d)(3) and § 365(d)(5) do not "entitle a lessor to an administrative expense; rather, the sections merely impose obligations on the trustee." Id. Since neither section provides a specific remedy, the minority cases hold that a lessor must invoke the general remedies available under the Bankruptcy Code such as a motion to modify or lift the automatic stay, a motion to compel assumption or rejection, or an application for an administrative expense. Id.

This Court agrees with the minority that the absence of a specific remedy in § 365(d)(5) requires a lessor to seek a general remedy under the Bankruptcy Code. Midway, 406 F.3d at 236. One of those remedies is an administrative expense claim under § 503(b). The language of § 365(d)(5) simply removes the need for the lessor to meet the actual and necessary requirements imposed under § 503(b)(1)(A). Id. at 236-38. Therefore, the lessor's claim under § 365(d)(5) is not limited by the actual and necessary limitation of § 503(b)(1)(A), but may be for an amount representing "all of the obligations" under a lease of personal property. Id. at 238.

Since a claim under § 365(d)(5) is an administrative expense claim under § 503(b), it must be treated equally and rateably with all other administrative expense claims. Midway, 406 F.3d at 241; Mammoth Mart, 536 F.2d at 953 (priority to one claimant over another dilutes the value of the priority scheme Congress intended). The timing of payment of administrative claims asserted under § 503(b) during a chapter 11 bankruptcy case is within the discretion of the bankruptcy court. Midway, 406 F.3d at 242. However, such claims must be paid in cash upon the effective date of a chapter 11 plan. 11 U.S.C. § 1129(a)(9)(A); In re UAL Corp., No. 02-B-48191, 2008 WL 1883370, at *9 (Bankr. N.D. Ill. Apr. 24, 2008) (§ 1129(a)(9)(A) of the Code

requires that all administrative claims be paid in full under any chapter 11 plan).  During the pendency of a chapter 11 case, the "lynchpin in determining the timing of payment of administrative expenses has been the solvency of the estate."  Pyxsys, 288 B.R. at 315 (citations omitted).

Where a chapter 11 debtor-in-possession is operating its business after the sixtieth day postpetition and pre-rejection, it is required to perform its obligations under a lease of personal property.  So long as other administrative expenses are being paid, obligations arising under § 365(d)(5) must be made absent extraordinary circumstances.  However, after a default in such obligations and the repossession of the leased property, such unperformed obligations are unpaid administrative expense obligations entitled to no greater priority than any other unpaid administrative expense.  In this case, the Debtor has neither filed a plan of reorganization nor suggested that it is administratively insolvent.  Accordingly, the Court shall order the Debtor to either (1) pay the Creditor's § 365(d)(5) claim in full, or (2) file a chapter 11 plan of reorganization and a disclosure statement which satisfies the requirements of § 1129(9)(A) on or before July 31, 2008 failing which, the Debtor shall be ordered to appear and show cause why its case should not be dismissed or converted.[5]

### C. Administrative Claim Under § 503(b)(1)(A)

The Creditor has also claimed a right to an administrative claim under § 503(b)(1)(A) for seventy-seven days.  The claim consists of two months of rent at the lease rate of $4,716.84 per month plus seventeen days at $157.22 per day.  The term of the Lease commenced November

---

[5] Pursuant to 11 U.S.C. § 1121(e)(2), as a small business debtor, the Debtor was required to file a plan and disclosure statement "not later than 300 days after the date of the order of relief" (i.e., June 8, 2008).  The Debtor failed to do so.

10, 2003 and the first monthly rent payment was due on that date. Therefore, the rent under the Lease is payable in advance. It appears that the creditor is seeking an administrative rent for the seventeen postpetition days in August 2007 (based on a thirty day month) plus the months of September and October of 2007.[6]

Unlike a claim under § 365(d)(5), a claim under § 503(b)(1)(A) is limited by the "actual and necessary" language in the statute. Midway, 406 F.3d at 236. The burden of establishing a right to treatment as a priority claim is on the Creditor. Hemingway, 954 F.2d at 5. In this case, the evidence of actual and necessary postpetition use of the Equipment by the Debtor is not clear. The Creditor claims that an admission by the Debtor at a hearing on the Creditor's request for stay relief proves that the Debtor was using the Equipment.[7] The Court finds the alleged admission by counsel for the Debtor to be less than clear. At the hearing on the Motion, counsel for the Debtor contended that the Debtor was not currently using the Equipment, but that it would be necessary for a reorganization. The repossession expenses submitted by the Creditor established that the Equipment was not operable on the date of repossession due, at least in part, to a dead battery. Therefore, the Creditor's own evidence suggests a period of non-use of the Equipment. Because the evidence is not clear and the burden to establish actual and necessary

---

[6] Because the rent is payable in advance under the Lease, the Creditor could possibly claim an administrative expense for the period between the Petition Date and the date the first rent payment was due after the sixtieth day postpetition or eighty-six days. Of course, the Debtor could claim that due to § 365(d)(5) the Creditor is only entitled to an administrative claim under § 503(b)(1)(A) for the first sixty days postpetition. In any event, the Court can only deal with the claim before it.

[7] The Creditor cites the following statement by counsel for the Debtor (Atty. Van De Water ) in response to a question from counsel for the Creditor (Atty. Gates):

> Atty. Gates: Is the debtor still using the equipment in his current business?
>
> Atty. Van De Water: I believe so, yes.

14

use is on the Creditor, the Court finds that the Creditor has failed to establish a right to an administrative expense under § 503(b)(1)(A).

## IV.  CONCLUSION

For the reasons set forth in this opinion, the Court finds that the Creditor is entitled to an administrative claim under § 503(b) and § 365(d)(5) in the amount of $14,150.52, representing Lease payments due November 10 and December 10, 2007, and January 10, 2008.  Based on the record before it, the Court finds that the Creditor is not entitled to an administrative claim under § 503(b)(1)(A).  The denial of the Creditor's request for an administrative claim under § 503(b)(1)(A) shall be without prejudice to the Creditor renewing such claim based upon evidence of actual and necessary use of the Equipment by the Debtor between the Petition Date and the sixtieth day postpetition.  Finally, the Court shall order the Debtor to either pay the § 365(d)(5) claim or file a plan of reorganization and disclosure statement on or before July 31, 2008, providing for such payment, failing which the Debtor shall be ordered to show cause why this case should not be dismissed or converted.

This opinion constitutes the  Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.

Date:   June 18, 2008                    /s/ J. Michael Deasy
                                          J. Michael Deasy
                                          Bankruptcy Judge